B1040 (FORM 1040) (12/15)

| ADVERSARY PROCEEDING COVER SHEET (Instructions on Reverse) | ADVERSARY PROCEEDING NUMBER (Court Use Only) |
|---|---|

| **PLAINTIFFS** Joshua Reagan Usry and Elizabeth Turner | **DEFENDANTS** Robert Jordan Construction LLC and Walter Robert Jordan |
|---|---|

| **ATTORNEYS** (Firm Name, Address, and Telephone No.) Russell Devenport    817-336-8651 777 Main St., Suite 2700 Fort Worth, Texas 76102 | **ATTORNEYS** (If Known) |
|---|---|

| **PARTY** (Check One Box Only) □ Debtor        □ U.S. Trustee/Bankruptcy Admin ☒ Creditor      □ Other □ Trustee | **PARTY** (Check One Box Only) ☒ Debtor        □ U.S. Trustee/Bankruptcy Admin □ Creditor      □ Other □ Trustee |
|---|---|

**CAUSE OF ACTION** (WRITE A BRIEF STATEMENT OF CAUSE OF ACTION, INCLUDING ALL U.S. STATUTES INVOLVED)

523(a)(2) and (4); contract and fraud

## NATURE OF SUIT

(Number up to five (5) boxes starting with lead cause of action as 1, first alternative cause as 2, second alternative cause as 3, etc.)

**FRBP 7001(1) – Recovery of Money/Property**
☐ 11-Recovery of money/property - §542 turnover of property
☐ 12-Recovery of money/property - §547 preference
☐ 13-Recovery of money/property - §548 fraudulent transfer
☐ 14-Recovery of money/property - other

**FRBP 7001(2) – Validity, Priority or Extent of Lien**
☐ 21-Validity, priority or extent of lien or other interest in property

**FRBP 7001(3) – Approval of Sale of Property**
☐ 31-Approval of sale of property of estate and of a co-owner - §363(h)

**FRBP 7001(4) – Objection/Revocation of Discharge**
☐ 41-Objection / revocation of discharge - §727(c),(d),(e)

**FRBP 7001(5) – Revocation of Confirmation**
☐ 51-Revocation of confirmation

**FRBP 7001(6) – Dischargeability**
☐ 66-Dischargeability - §523(a)(1),(14),(14A) priority tax claims
☒ 62-Dischargeability - §523(a)(2), false pretenses, false representation, actual fraud
☒ 67-Dischargeability - §523(a)(4), fraud as fiduciary, embezzlement, larceny

(continued next column)

**FRBP 7001(6) – Dischargeability (continued)**
☐ 61-Dischargeability - §523(a)(5), domestic support
☐ 68-Dischargeability - §523(a)(6), willful and malicious injury
☐ 63-Dischargeability - §523(a)(8), student loan
☐ 64-Dischargeability - §523(a)(15), divorce or separation obligation (other than domestic support)
☐ 65-Dischargeability - other

**FRBP 7001(7) – Injunctive Relief**
☐ 71-Injunctive relief – imposition of stay
☐ 72-Injunctive relief – other

**FRBP 7001(8) Subordination of Claim or Interest**
☐ 81-Subordination of claim or interest

**FRBP 7001(9) Declaratory Judgment**
☐ 91-Declaratory judgment

**FRBP 7001(10) Determination of Removed Action**
☐ 01-Determination of removed claim or cause

**Other**
☐ SS-SIPA Case – 15 U.S.C. §§78aaa et.seq.
☐ 02-Other (e.g. other actions that would have been brought in state court if unrelated to bankruptcy case)

| ☒ Check if this case involves a substantive issue of state law | □ Check if this is asserted to be a class action under FRCP 23 |
|---|---|
| □ Check if a jury trial is demanded in complaint | Demand $ |
| Other Relief Sought | |

B1040 (FORM 1040) (12/15)

| BANKRUPTCY CASE IN WHICH THIS ADVERSARY PROCEEDING ARISES | | |
|---|---|---|
| NAME OF DEBTOR<br>Robert Jordan Construction LLC | BANKRUPTCY CASE NO.<br>22-41804-elm7 | |
| DISTRICT IN WHICH CASE IS PENDING<br>Northern District of Texas | DIVISION OFFICE<br>Fort Worth Division | NAME OF JUDGE |
| RELATED ADVERSARY PROCEEDING (IF ANY) | | |
| PLAINTIFF | DEFENDANT | ADVERSARY<br>PROCEEDING NO. |
| DISTRICT IN WHICH ADVERSARY IS PENDING | DIVISION OFFICE | NAME OF JUDGE |
| SIGNATURE OF ATTORNEY (OR PLAINTIFF) | | |
| DATE<br><br>November 11, 2022 | PRINT NAME OF ATTORNEY (OR PLAINTIFF)<br><br>Russell A. Devenport | |

## INSTRUCTIONS

The filing of a bankruptcy case creates an "estate" under the jurisdiction of the bankruptcy court which consists of all of the property of the debtor, wherever that property is located. Because the bankruptcy estate is so extensive and the jurisdiction of the court so broad, there may be lawsuits over the property or property rights of the estate. There also may be lawsuits concerning the debtor's discharge. If such a lawsuit is filed in a bankruptcy court, it is called an adversary proceeding.

A party filing an adversary proceeding must also must complete and file Form 1040, the Adversary Proceeding Cover Sheet, unless the party files the adversary proceeding electronically through the court's Case Management/Electronic Case Filing system (CM/ECF). (CM/ECF captures the information on Form 1040 as part of the filing process.) When completed, the cover sheet summarizes basic information on the adversary proceeding. The clerk of court needs the information to process the adversary proceeding and prepare required statistical reports on court activity.

The cover sheet and the information contained on it do not replace or supplement the filing and service of pleadings or other papers as required by law, the Bankruptcy Rules, or the local rules of court. The cover sheet, which is largely self-explanatory, must be completed by the plaintiff's attorney (or by the plaintiff if the plaintiff is not represented by an attorney). A separate cover sheet must be submitted to the clerk for each complaint filed.

**Plaintiffs** and **Defendants.** Give the names of the plaintiffs and defendants exactly as they appear on the complaint.

**Attorneys.** Give the names and addresses of the attorneys, if known.

**Party**. Check the most appropriate box in the first column for the plaintiffs and the second column for the defendants.

**Demand.** Enter the dollar amount being demanded in the complaint.

**Signature.** This cover sheet must be signed by the attorney of record in the box on the second page of the form. If the plaintiff is represented by a law firm, a member of the firm must sign. If the plaintiff is pro se, that is, not represented by an attorney, the plaintiff must sign.

Russell A. Devenport
McDonald Sanders, P.C.
777 Main St., Suite 2700
Fort Worth, Texas 76102
Telephone: 817-336-8651
Facsimile: 817-334-0271
rdevenport@mcdonaldlaw.com
ATTORNEY FOR PLAINTIFFS

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION**

| | | |
|---|---|---|
| In re: | § | BANKRUPTCY NO. |
| | § | 22-41804-elm7 |
| ROBERT JORDAN CONSTRUCTION LLC | § | |
| Debtor. | § | CHAPTER 7 |

| | | |
|---|---|---|
| | § | |
| JOSHUA REAGAN USRY and | § | |
| ELIZABETH TURNER, | § | |
| | § | |
| v. | § | Adv. Proc. No. _____ |
| | § | |
| ROBERT JORDAN | § | |
| CONSTRUCTION LLC, and | § | |
| WALTER ROBERT JORDAN, | § | |

**COMPLAINT TO DETERMINE
DISCHARGEABILITY OF DEBT UNDER 11 U.S.C. § 523**

TO THE HONORABLE UNITED STATES BANKRUPTCY JUDGE:

NOW COMES JOSHUA REAGAN USRY and ELIZABETH TURNER ("Plaintiffs"), complaining of Debtor Robert Jordan Construction LLC and Walter Robert Jordan (together, "Defendants"), and present this Complaint to Determine Dischargeability of Debt under 11 U.S.C. § 523 and for cause of action would respectfully show the Court the following:

**INTRODUCTION**

1.     Walter Robert Jordan and his company Robert Jordan Construction LLC defrauded Plaintiffs through false representation. false or misleading and deceptive acts, breach of fiduciary

duty and actual fraud.  Moreover, Jordan willfully and malicious caused financial injury to Plaintiffs by misappropriation and breach of fiduciary duty. Accordingly, Defendants' indebtedness to Plaintiffs totaling the principal sum of at least $150,808.16 should be excepted from discharge – to the extent Defendants are eligible to receive one at all.

## JURISDICTION AND VENUE

2.       This Court has jurisdiction of this adversary proceeding pursuant to 28 U.S.C. § 1334(a)-(b), 28 U.S.C. § 1367(a), and 11 U.S.C. § 523. This is a core proceeding under 28 U.S.C. § 157(b)(2)(I).  Venue is proper in this Court pursuant to 28 U.S.C. § 1409(a).

## PARTIES

3.       Plaintiffs are creditors of Debtor in the above-entitled and numbered bankruptcy proceeding.  Plaintiffs are individuals residing in Texas and have standing to bring this adversary proceeding under 11 U.S.C. § 523(c).

4.       Debtor may be served with summons and this Complaint through his Chapter 7 counsel and at its mailing address, as shown in his bankruptcy case, of 2640 Corzine Drive Arlington, Texas 76013, through first class mail pursuant to Rule 7004 of the Federal Rules of Bankruptcy Procedure.

5.       Defendant Walter Robert Jordan may be served with process at 640 Corzine Drive Arlington, Texas 76013. Mr. Jordan is the sole member of Debtor and Debtor is the alter ego of Mr. Jordan.

## STATEMENT OF FACTS

6.        Plaintiffs considered using Debtor to renovate property at 820 West Inwood in Arlington, Texas (the "Property"). From December 2021 to early January 2022 Plaintiffs had multiple meetings with Debtor representatives Danny Targonski and Gerald Reeves to discuss and consider possible renovations.  During this time Debtor's representatives made walkthroughs of

the Property and provided Plaintiffs with cost estimates, plans, and renders.  Targonski also told

Plaintiffs that if they paid in full up front 'they'd move to the front of the line.'  Both of Debtor's

representatives made several assurances during these meetings that their intended renovations were

feasible despite the Property being a 1940's (or earlier) farmhouse.  On or about January 20th,

2022, Plaintiffs paid $30,000 to Debtor via a cashier's check from Frost Bank.  The check was

cashed next day by Debtor.

7.      Over the course of six months, meetings continued with many different Debtor

representatives.  In mid-April 2022 Frank Pfannenstiel was assigned to the project.  Frank

conducted a walkthrough (despite Targonski / Reeves having already done so) of the Property.

Plaintiffs asked Pfannenstiel for an itemized budget on April 20, 2022 and again on April 24, 2022.

April 25, 2022.  Plaintiff received a message from Targonski that said Frank had suddenly resigned

from Robert Jordan Construction.  Plaintiffs received itemized budget April 29th from Targonski.

8.      In late April 2022 Jason Wilborn was assigned to the Project and then removed

from the project without explanation.

9.      Plaintiffs agreed to move to an Airbnb on May 1, 2022, a date that the Debtor had

assured would be on or about when demo would finally start.  Instead of arranging long-term living

accommodations during construction, Plaintiffs chose Airbnb because of the short timeline that

Debtor had promised (construction would take about a month). On May 5, 2022, work had still not

begun so Plaintiffs requested a project timeline and status of their deposit - i.e., what was being

done with the $30,000 that had been paid several months prior.  May 6, 2022, Targonski and

Reeves informed Plaintiffs that another project manager, Sammy Baze, had been assigned to the

project (the 3rd Project Manager without work having started).  On May 11, 2022, Baze conducted

yet another walkthrough of the Property.  On May 17, 2022, Plaintiffs met Baze and structural

engineer Jessica Kilgore at the Property to review project conditions.  Kilgore inspected the crawlspace below the Property's pier and beam foundation but did not inspect the attic.  Kilgore approved the work to move forward and demo began the next day.

10.    On May 18, 2022, work began with demolition.  May 20, 2022, Targonski called a 'crisis meeting' to discuss multiple problems that had been 'recently' discovered, including ceiling joists reportedly being bowed, a lack of insulation in the attic, a lack of sill plates in various locations, cast iron pipes and a variety of water damage.  Debtor also complained that there was a lack of subfloor through the home and that tile could not be laid because of foundation problems.  Debtor demanded that Plaintiffs pay for foundation work from an 'independent' foundation specialist.  Debtor provided no explanation as to how any of these easily identifiable problems had not been found through the multiple 'walkthroughs' and inspections by Project Managers and the detailed inspection by a structural engineer prior to demolition work.  Debtor purports to be roofing experts but never inspected the roof of the Property from the attic.

11.    After this new information presented six months in the process despite multiple inspections by the Debtor representatives, Plaintiffs were forced to end the project.  They could not afford the new additional costs now required.  Unfortunately, Debtor had already demolished much of the interior of the home rendering it unlivable.  On May 27th, 2022, Plaintiffs had a meeting with Targonski and Reeves, explained that the project was over, and requested their deposit back minus services rendered (as long as documentation was provided).   Debtor did not respond so Plaintiffs made the request again, in writing, on or about May 31st, 2022. Targonski replied saying that Defendant Jordan prefers to meet face to face.  On June 6th, 2022, Defendant Jordan contacted Liz Turner (but not Josh Usry) insisting on a meeting with only her at his office.

12.      On June 9, 2022, Plaintiffs employed legal counsel to make inquires and demand information and a refund.  On June 2, 2022, an itemization of the demolition work was requested. Debtor denied multiple requests to provide information on what was done with the $30,000 deposit.  On August 8, 2022, Plaintiffs gave demand via counsel and asserted that Debtor's conduct constituted false or misleading and deceptive acts in violation of §17.46(b)(5) of the Texas Deceptive Trade Practices / Consumer Protection Act.  Debtor filed bankruptcy the next day.

## NON-DISCHARGEABILITY OF DEBT & CAUSES OF ACTION

### *Non-Dischargeability of Debt under Section 523(a)(2)(A)*

13.      Plaintiffs incorporates by reference all of the factual allegations set forth in the preceding paragraphs as if fully set forth herein.

14.      Under Sections 523(a)(2)(A) of the Bankruptcy Code, Defendants are not entitled to discharge because they obtained money by false pretenses, false representation, or actual fraud. Defendants Jordan and Robert Jordan Construction obtained money by false pretenses, false representations, and actual fraud.

15.      Section 523(a)(2)(A) of the Bankruptcy Code provides that discharge in bankruptcy does not discharge the Debtor from any debt for money or an extension of credit obtained by 'false pretenses, false representations, or actual fraud."  The purpose of excepting debts from discharge for fraud is to prevent debtors from retaining the benefits of property obtained by fraudulent means and to ensure that relief intended for honest debtors does not benefit dishonest debtors. Consequently, debts resulting from money and/or property that has been obtained by false pretenses, false representations or by means of actual fraud are not dischargeable.

16.      According to the Firth Circuit, for a debt to be non-dischargeable due to 'false pretenses' and 'false representations,' a creditor must show by a preponderance of the evidence

that: 1) the debtor made a representation; 2) the debtor knew the representation was false; 3) the representation was made with the intent to induce the creditor to part with money or property; 4) the creditor actually and justifiably relied on the representation; and 5) the creditor parted with money or property as a proximate result of its reliance. *Saenz v. Gomez (In re Saenz)*, 899 F.3d 384, 394 (5th Cir. 2018); *In re Acosta*, 406 F.3d 367, 372 (5th Cir. 2005; *AT & T Universal Card Servs. v. Mercer (In re Mercer)*, 246 F.3d 391, 403 (5th Cir. 2001). A promise regarding a future action can form the basis for a non-dischargeable debt if the debtor has a reckless disregard for the truth of his statements or made 'promises of future action which, at the time they were made, he had no intention of fulfilling." *In re Borshow*, 454 B.R. 374, 396 (Bankr. W.D. Tex. 2011), aff'd, 467 B.R. 410 (W.D. Tex. 2012).

17.     With regard to "actual fraud", the Supreme Court explained that the operative term "encompasses conduct that goes beyond fraud by misrepresentation. *Husky Int'l Elecs., Inc. v. Ritz*, 136 S. Ct. 1581, 1586 (2016). Among other things, "[t]he term 'actual fraud' in §523(a)(2)(A) encompasses forms of fraud, like fraudulent conveyance schemes, that can be effected with a false representation." *Husky Int'l Elecs., Inc.*, 136 S. Ct. at 1586 (Based upon Congress' addition of "actual fraud" to "false pretenses" and a "false representation" as a basis for non-dischargeability, "[i]t is therefore sensible to start with the presumption that Congress did not intend 'actual fraud' to mean the same thing as 'a false representation,'...."). The Supreme Court further ruled that "actual fraud" does not require a false representation. Instead, "actual fraud" broadly and simply requires proof of fraudulent conduct involving moral turpitude or for the purpose of committing an intentional wrong.

18.     As detailed above, Defendants represented to Plaintiffs that the planned work could be done to the Property and that by paying the money the project would move to first in line. All

the while, Defendants knew that the requisite inspections had recklessly not been undertaken to assure that the work could be done as promised because it had been the intention of Defendants to get the payment from Plaintiffs to use for other  purposes. Defendants used false pretenses and false representations to induce Plaintiffs to give Defendants money.  There was clear fraudulent conduct and schemes used to take Plaintiffs' money.  Defendants' representations were material. Defendants' conduct was intentional and the paragon of moral turpitude with special consideration to the fact that after Plaintiffs terminated the contract, Defendant Jordan pressured Plaintiff Liz Turner into a meeting while holding her $30,000 deposit hostage.  Defendants never had any intention of fulfilling the promises made and said what they needed to in order to obtain money from Plaintiffs.  The representations were knowingly false when made or were made with reckless indifference.  There was no basis in fact with regard to the stories given Plaintiffs.  Defendants' actions were for the purpose of obtaining money from Plaintiffs.  Plaintiffs' damages resulted from reliance of the misrepresentation of a project that could not be completed as promised.  Plaintiffs did, in fact, reply on the representations and such reliance was justifiable.   In Debtor's failure to properly examine the Property and give full disclosures regarding the project prior to conducting demolition work the damages include, but are not limited to, the $30,000 deposit paid to the Debtor and any diminution in value that was suffered because of the demolition work prior to the sale of the Property (which occurred on August 27, 2022).  Further, Plaintiffs were forced to sell the Property and find other living arrangements, including a series of Airbnb rentals in Tarrant County totaling around $20,000.00 from May to September.  Finally, Plaintiffs' attorney's fees incurred pre-petition are $2,000. In fact, among other things, Debtor's difficulties with the Arlington Independent School District drove Defendants to use Plaintiffs' funds on other expenses. Alternatively, Debtor's difficulties with a 'cash flow crash' and 'a buyer from outside the business

back[ing] out', as testified by Debtor Jordan during the 341 Creditor's meeting, drove Debtor to use Plaintiffs' funds on other expenses.

19.     Since Debtor obtained money from Plaintiffs through false pretenses, false representations, and actual fraud, and Plaintiffs were damaged as a result of these actions, such damages must be expected from discharge.

### *Non-Dischargeability of Debt under Section 523(a)(4)*

20.     Plaintiffs incorporate by reference all of the factual allegations set forth in the preceding paragraphs as if fully set forth herein.

21.     Under Sections 523(a)(4) of the Bankruptcy Code, Debtor is not entitled to discharge because he committed 'fraud or defalcation while acting in a fiduciary capacity.' The Fifth Circuit has held that "defalcation does not require fraud or embezzlement, but only willful neglect of duty." *Shcolnik v. Rapid Settlements Ltd (In re Shcolnik)*, 670 F.3d 624, 628 (5th Cir. 2012). In the context of section 523(a)(4), the term "fiduciary" is construed narrowly, limited to "technical trusts" and to traditional fiduciary relationship involving "trust-type' obligations imposed by statue or common law. *In re Harwood,* 637 F.3d 615, 619-20 (5th Cir. 2011). "The scope of the concept of fiduciary under [section 523(a)(4)] is a question of federal law; however, state law is important in determining where or not a trust obligation exists." *Id.* at 620 (internal citations omitted).

22.     Texas Property Code 162 clearly states that a trust obligation exists between the Plaintiff and the Debtor. Under Texas Property Code 162, a trust fund is created when 'construction payments are made to a contractor or subcontractor or to an officer, director, or agent of a contractor or subcontractor, under a construction contract for the improvement of specific real property in this [Texas].' TEX.PROP.CODE ANN. § 162.001(a). The trustee of the trust fund is

defined as a "contractor, subcontractor, or owner or an officer, director, or agent of a contractor, subcontractor, or owner, who receives trust funds or who has control or direction of trust funds." TEX.PROP.CODE ANN. § 162.002.  A property owner is a beneficiary of trust funds described in Section 162.001 in connection with a residential construction contract, including funds deposited into a construction account. TEX.PROP.CODE ANN. § 162.003.

23.    Plaintiffs paid Defendnats $30,000 as a construction payment, under a construction contract, for the improvement of a specific real property in Arlington, Texas.  Defendants are trustees as defined in TEX.PROP.CODE ANN. § 162.002.

24.    Before having to sell the Property, Plaintiffs were property owners in connection with a residential construction contract by having provided Defendant money to deposit into its construction account and therefore is a beneficiary of the trust fund as defined in TEX.PROP.CODE ANN. § 162.003.

25.    Defendants misapplied the trust fund as defined in TEX.PROP.CODE ANN. § 162.031(a), where 'a trustee who intentionally or knowingly or with intent to defraud, directly or indirectly, retains, uses, disburses, or otherwise diverts trust funds without first fully paying all current or past due obligations incurred by the trustee to the beneficiaries of the trust funds, has misapplied the funds.'   Defendants intentionally, knowingly, and directly retained Plaintiffs' $30,000 deposit after Plaintiffs terminated the project without providing any documentation or explanation whatsoever.  Plaintiffs also again allege that Robert Jordan Construction is the alter ego of Walter Robert Jordan and because Robert Jordan Construction only had one member, Walter Robert Jordan. Jordan was the only person to receive the trust fund and the only officer, director, or agent who had control or direction of the trust fund.

26.     Defendants breached their fiduciary duty, created under Texas Property Code 162 as described above. The elements for a breach of fiduciary duty claim are 1) the existence of a fiduciary duty; 2) breach of a fiduciary duty; 3) causation; and 4) damages. *First United Pentecostal Church of Beaumont v. Parker,* 514 S.W.3d 214, 220 (Tex. 2017). Per TEX.PROP.CODE Ann. § 162.031 Defendants became a trustee when they received Plaintiff's construction payment, under a construction contract, for the improvement of a specific real property in Arlington, Texas. Defendants breached their fiduciary duty when they converted Plaintiffs' deposit after the project was terminated and denied multiple requests from Plaintiffs for invoices, documentation, or explanation. As a result of Defendants' breach of fiduciary duty Plaintiffs have been damaged by losing $30,000, whatever value loss was suffered because of the demolition work prior to the sale of the Property, and the costs associated with finding new living accomidations on extremely short notice.

### *Non-Dischargeability of Debt under Section 523(a)(6)*

27.     Plaintiffs incorporate by reference all of the factual allegations set forth in the preceding paragraphs as if fully set forth herein.

28.     Section 523(a)(6) of the Bankruptcy Code provides that a debtor is not entitled to a discharge of his debts to a creditor if that debtor engaged in actions which resulted in willful and malicious injury to another entity or the property of another entity.  Under section 523(a)(6) of the Bankruptcy Code, Debtor is not entitled to discharge because: 1) he intentionally took action that necessarily caused, or was substantially certain to cause, injury to Plaintiff; 2) his breach of contract involved an intentional or substantially certain injury; and 3) he willfully converted and stole Plaintiff's property.

29.     First, the Fifth Circuit has determined that the test for "willful and malicious" should be single inquiry entailing a two-pronged test.  That is, "willful and malicious" injury occurs where there is either: 1) an objective substantial certainty of harm; or 2) a subjective motive to cause harm.  *Matter of Miller*, 156 F.3d 598, 603 (5th Cir. 1998), citing *Kawaauhau v. Geiger*, 523 U.S. 57 (1998).  "The word 'willful' in (a)(6) modifies the word 'injury,' indicating that non-dischargeability takes a deliberate or intentional injury, not merely a deliberate or intentional act that leads to injury. Had Congress meant to exempt debts resulting from unintentionally inflicted injuries, it might have described instead 'willful acts that cause injury.' Or, Congress might have selected an additional word or words, i.e., 'reckless' or 'negligent,' to modify 'injury.'" *Kawaauhau v. Geiger*, 523 U.S. 57, 61 (1998).  The objective standard is met when the court holds that the debtor 'intentionally took action that necessarily caused, or was substantially certain to cause, the injury."  *In re Davenport*, 353 B.R. 150, 202 (Bankr. S.D. Tex. 2006).  "Whether the acts were substantially certain to cause injury (the "objective test") is based on "whether the [d]efendant's actions, which from a reasonable person's standpoint were substantially certain to result in harm, are such that the court ought to infer that the debtor's subjective intent was to inflict a willful and malicious injury on the Plaintiff." In re Powers, 421 B.R. 326, 335 (Bankr. W.D. Tex. 2009) (emphasis in original). A subjective motive to cause harm (the "subjective test") exists when a tortfeasor acts "deliberately and intentionally, in knowing disregard of the rights of another." See Miller, 156 F.3d at 605-06 (adopting the definition of "implied malice" from In re Nance, 556 F.2d 602, 611 (1st Cir. 1977))" Lowry v. Croft (In re Croft), 500 B.R. 823, 860 (Bankr. W.D. Tex. 2013).

30.     Defendants obtained money through false representation. false or misleading and deceptive acts, breach of fiduciary duty and actual fraud.  Under the "objective" test, Defendants'

actions were substantially certain to harm Plaintiffs, and, in fact, did harm Plaintiffs.  Further, Plaintiffs argue that 'no reasonable person' would convert a $30,000 deposit without any explanation.  Further, Defendant knowing disregarded the rights of Plaintiffs when they took the deposit after Plaintiffs asked for it back minus whatever work had been performed (with supporting documentation).

31.    Second, the Fifth Circuit acknowledged that a breach of contract may involve intentionally or substantially certain injury, which may prevent discharge under § 523(a)(6).  More specifically, if a factfinder decides that a debtor knew of his obligations under the contract, then a factfinder may also find that the debtor knowingly acted in violation of the contract, an act which the debtor knew would necessarily cause injury to the creditor.  In turn, this could result in a finding of willful or malicious injury.  *State of Tex. By & Through Bd. of Regents of Univ. of Texas Sys. v. Walker*, 142 F.3d 813, 823-24 (5th Cir. 1998).  As detailed above, the acts and omissions of Defendants constitute breaches of contract, as well as fraud, which should also prevent discharge under § 523(a)(6).  Defendants willfully and maliciously caused Plaintiffs' injury after Plaintiff requested their deposit back minus whatever work had beenn performed (with supporting documentation).  As a result of Defendants' intentional acts, breach of contract, and / or conversion, Plaintiff has been damaged.

32.    The conduct of Defendants described herein, and as will be shown to the Court, falls within these Bankruptcy code sections and must be excepted from any discharge from the Court.  Accordingly, Plaintiffs pray that after trial hereof, the Court determine that the debt of Debtor owed to Plaintiffs is non-dischargeable pursuant to Bankruptcy Code § 523(a)(2)(A), § 523(a)(4), and § 523(a)(6) and the same is true for Defendant Robert Jordan to any extent Robert Jordan would enjoy any discharge or protection from the Bankruptcy code of this Court. With

further regard to Defendant Robert Jordan, along with declaration of non-dischargeability for Debtor's obligations, Plaintiffs seek a declaration regarding Defendant Robert Jordan.

### *Breach of Contract*

33.    Plaintiffs incorporate by reference all of the factual allegations set forth in the preceding paragraphs as if fully set forth herein.

34.    Plaintiffs have a claim and cause of action for breach of contract.  Plaintiffs seek recovery of all actual damages, along with accrued interest allowed by law, pre- and post-judgement interest, attorney's fees and cost and expenses.

### *Unjust Enrichment & Money Had and Received*

35.    Plaintiffs incorporate by reference all of the factual allegations set forth in the preceding paragraphs as if fully set forth herein.

36.    Plaintiffs allege that Defendants diverted funds for their own use and benefit which rightfully belongs to Plaintiffs.  In order to prevent unjust enrichment to Defendants and for the purposes of Plaintiffs being treated in a fair and equitable manner, the actual amounts taken and diverted by Defendants should be returned.  Plaintiffs bring this action against Defendants for money had and received and seek the recovery of actual damages and pre- and post- judgment interests as allowed by law.

### *Texas Theft Liability Act*

37.     Plaintiffs incorporate by reference all of the factual allegations set forth in the preceding paragraphs as if fully set forth herein.

38.     Based upon the foregoing, Plaintiffs further allege that Defendants committed conversion and fraud under the Theft Liability Act, Tex. Civ. Prac & Rem. Code §134.0O1 — 134.005.    Specifically, Plaintiffs had a possessory right to the funds taken and diverted by Defendants for their own use and benefit, Defendants unlawfully appropriated the property buy taking it without Plaintiffs' effective consent, Defendants took the property with the intent to deprive Plaintiffs of the property and Plaintiffs sustained damages as a result of Defendants' actions.    The actions by Defendants violated Texas criminal statutes.    Plaintiffs bring this action against Defendants for recovery under the Texas Theft Liability Act and seek recovery of actual damages, exemplary or punitive damages, attorneys' fees and pre- and post- judgement interest as allowed by law.

### *Texas Deceptive Trade Practices Act*

39.     Plaintiffs incorporate by reference all of the factual allegations set forth in the preceding paragraphs as if fully set forth herein.

40.     To prevail on a DTPA claim, the plaintiff must demonstrate (1) the plaintiff's status as a consumer, (2) the defendant can be sued under the DTPA, (3) the defendant committed a wrongful act under the DTPA, and (4) the defendant's actions were a producing cause of the plaintiff's damages. Tex. Bus. & Com. Code §17.50(a) (West 2011); *Amstadt v. U.S. Brass Corp.,* 919 S.W.2d 644, 649 (Tex. 1996) ("A consumer must, in order to prevail on a DTPA claim, . . . establish that each defendant violated a specific provision of the Act, and that the violation was a producing cause of the claimant's injury.").

41.    Plaintiffs are consumers as defined by DTPA § 17.45(4) which states "'consumer'
an individual, partnership, corporation, this state, or a subdivision or agency of this state who seeks
or acquires by purchase or lead, any good or services, except that the term does not include a
business consumer that has assets of $25 million or more, or that is owned or controlled by a
corporation or entity with assets of $25 million or more.    The Texas Supreme Court has "also
recognized at least two requirements that must be established for a person to qualify as a consumer
under the DTPA. One requirement is that the person must have sought or acquired goods or
services by purchase or lease. Another requirement recognized by this Court is that the goods or
services purchased or leased must form the basis of the complaint. If either requirement is lacking,
the person aggrieved by a deceptive act or practice must look to the common law or some other
statutory provision for redress." *Cameron v. Terrell & Garrett, Inc*., 618 S.W.2d 535, 539 (1981).
In other words, under the language of the DTPA, once an entity is a consumer, a claim may be
brought against any person, regardless of that person's relationship with the transaction, and
notwithstanding the lack of privity. 919 S.W.2d 644 (Tex. 1996).  Plaintiffs sought services from
Defendants and those services form the basis of this Complaint.  Therefore, Plaintiff argues that
Defendants can be sued under the DTPA.

42.    Defendants, as alleged above, are engaging or have engaged in false, misleading,
or deceptive acts or practices in the conduct of trade or commerce, in violation of DTPA § 17.46(b)
as follows: a. "[R]epresenting that goods or services have sponsorship, approval, characteristics,
ingredients, uses, benefits, or quantities which they do not have or that a person has a sponsorship,
approval, status, affiliation, or connection which the person does not," DTPA § 17.46(b)(5)); and
b. "[F]ailing to disclose information concerning goods or services which was known at the time of
the transaction if such failure to disclose such information was intended to induce the consumer

into a transaction into which the consumer would not have entered had the information been disclosed," DTPA § 17.46(b)(24).   And to prove a DTPA action for failure to disclose information the plaintiff must show (1) a failure to disclose, (2) which was known at the time of the transaction, (3) which was intended to induce the plaintiff into a transaction, and (4) that the plaintiff otherwise would not have entered the transaction if the information had been disclosed. *Colonial Cnty. Mut. Ins. Co. v. Valdez*, 30 S.W.3d 514, 517–18 (Tex. App.—Corpus Christi 2000, no pet.).   There is generally no requirement that the plaintiff prove intent, knowledge, or unreasonableness of the defendant in disseminating the misrepresentation. TEX. Bus. & COMM. CODE ANN. § 17.46(b) (9), (10), (13), (17) (Supp. 1976) (contain a scienter requirement).

43.     Defendants knew that the renovation plan for the Property was not feasible and failed to disclose the 'true state' of the Property to Plaintiffs.  Further, Plaintiffs would have not entered into a contract with Debtor if that information had been disclosed.  Defendants have never disclosed any information to Plaintiffs with regard to how the $30,000 deposit was spent which constitutes a false, misleading, or deceptive act or practice, despite multiple requests, after only a few days of work at the Property.

44.     Defendants through false representation. false or misleading and deceptive acts, breach of fiduciary duty and actual fraud were a producing cause of Plaintiffs' damages.

45.     The statute of limitations for a DTPA claim is two years. Tex. Bus. & Com. Code Ann. § 17.565 (West 2011). A DTPA claim accrues when (1) the false, misleading, or deceptive act or practice occurred, or (2) the consumer discovered or in the exercise of reasonable diligence should have discovered the false, misleading, or deceptive act or practice. *Id.*

46.    Plaintiffs' DTPA claim started accruing on or about June 2022 when Plaintiffs ended construction at the Property and Debtor converted the $30,000 deposit without explanation. As such, Plaintiffs are within the statute of limitations for a DTPA claim.

## ATTORNEYS' FEES AND COSTS

47.    Plaintiffs are entitled to recover from Defendants and hereby request their attorneys' fees and related expenses incurred in the prosecution of this adversary proceeding in accordance with the terms of the parties' agreements and other applicable law.

## RESERVATION OF RIGHTS

48.    Plaintiffs reserve the right to amend and supplement this Complaint and add causes of action as facts may be discovered through discovery and the prosecution of this action.

## CONDITIONS PRECEDENT

49.    All conditions precedent to Plaintiffs' recovery have occurred, have been performed, are excused, waived, or otherwise satisfied.

## PROOFS OF CLAIM

50.    Plaintiffs hereby incorporates by reference their Proofs of Claim that may be filed in Debtor's bankruptcy.

## PRAYER

WHEREFORE, PREMISES CONSIDERED, Plaintiffs Joshua Reagan Usry and Elizabeth Turner requests that Defendants Robert Jordan Construction and Walter Robert Jordan be cited to appear and answer and that, upon final trial, Plaintiffs have judgement against Defendants, jointly and severally, for all sums due, including all actual, punitive, and exemplary damages and a determination and declaration that the debts of Walter Robert Jordan to Plaintiffs are

nondischargeable and survive Debtor's bankruptcy proceeding.  Plaintiffs further seek fees and

costs from Defendants and such other and further relief to which Plaintiffs may be entitled.

Respectfully submitted,

 _/s/ Russell A. Devenport_____
Russell A. Devenport
Texas Bar No. 24007109
rdevenport@mcdonaldlaw.com
Sarah M. Kline
Texas Bar No. 24110097
smk@mcdonaldlaw.com
McDONALD SANDERS, P.C.
777 Main Street, Suite 2700
Fort Worth, Texas 76102
(817) 336-8651 telephone
(817) 334-0271 facsimile

**ATTORNEYS FOR PLAINTIFFS JOSHUA
USRY AND ELIZABETH TURNER**